## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

KAMIL MIARKA,                      )
    Plaintiff,                     )
                        )
v.                                 )      Civil Action No. 17-243-CG-N
                        )
CITY OF GULF SHORES, *et al.*,      )
    Defendants.                    )

## REPORT AND RECOMMENDATION

Currently pending before this Court is Defendants, City of Gulf Shores, Richard King, and Paul Maliska's, Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) and brief in support thereof. (Doc. 2). The motion was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). Plaintiff has filed a response to the motion (Doc. 6) to which Defendants have replied (Doc. 7). After careful consideration of the record, it is recommended that Defendants' Motion to Dismiss be granted.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Kamil Miarka ("Miarka"), is the owner of MudBugs Pub & Club, located on Highway 59 in Gulf Shores, Alabama. On April 27, 2015, Plaintiff received a phone call from an employee informing him that Plaintiff's now ex-wife, Janley Woerner Miarka ("Woerner"), had entered Mudbugs and was raiding the business. (Doc. 1-1 at 4). Plaintiff, while en route to the business, called the City of Gulf Shores Police Department and

1

requested police assistance. (*Id*). Plaintiff and the responding police officers, Officer Richard King ("King") and Officer Paul Maliska ("Maliska") arrived at the business at approximately the same time, around noon, and discovered Woerner removing file boxes and personal property belonging to Plaintiff from the business. (*Id*).

At the time the police were called, Plaintiff and Woerner were involved in divorce proceedings. (*Id*. at 3). Prior to the incident, on April 17, 2015, Plaintiff had additionally filed for bankruptcy in the U.S. Bankruptcy Court in the Southern District of Alabama. (*Id*. at 2). Both the bankruptcy proceeding and the divorce proceeding involved the ownership, control, and maintenance of the business. After filing his bankruptcy petition, Plaintiff filed a motion to stay the divorce proceeding pending the bankruptcy case. (*Id*. at 4).

When the police officers arrived at the business, Woerner provided them with a copy of a court order from the divorce court (the "Order") which gave Woerner the right to be on the premises. (Doc. 1-1 at 5; Doc. 2-5). Conversely, Plaintiff informed the officers that there was a Federal Court Stay in place and that Woerner was not allowed to be on the premises. (Doc. 1-1 at 5). Plaintiff additionally informed the officers that his name was on the relevant business licenses and not Woerner's name to which Officer Maliska told Plaintiff to "shut the f**k up!" and prevented him form entering the business. (*Id*). Plaintiff showed the officers a copy of the Notice of

Automatic Stay[1] (the "Notice") on his cell phone prompting the officers to ask Plaintiff for a printed copy. (*Id*). The officers then allowed Plaintiff access to the business office to print the Notice and Plaintiff provided the Notice to Officer King. (*Id*).

Upon receipt of the Notice, Officer King directed everyone to remain in the business and walked away to make a phone call in private. (*Id*). Following his phone call, Officer King commanded Plaintiff, his friend Sara Simpson, and the employees of the business to leave the premises and allowed Woerner to remain on the property. (*Id*). Simpson responded that a the federal bankruptcy proceeding took precedence over the divorce action to which Officer King responded that the divorce court order contained a later date. (*Id*. at 5-6). Plaintiff asked the officers "what about my money and my property" to which Officer Maliska responded to the effect that everything belonged to Woerner. (*Id*).

Attached to his Complaint, is the Notice that Plaintiff provided to Officers King and Maliska. (Doc. 1-1 at 11-12). With regard to the automatic stay, the Notice dated April 17, 2015, provides in pertinent part as follows:

Creditors May Not Take Certain Actions:

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to

---

[1] Plaintiff describes the Notice as a "Notice of Automatic Stay", although the document is actually entitled "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines". (Doc. 1-1 at 11-12).

collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

[. . .]

Prohibited collection actions are listed in Bankruptcy Code § 362. Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; starting or continuing lawsuits or foreclosures; and garnishing or deducting from the debtor's wages. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay.

(Doc. 1-1 at 11-12; Doc. 2 at 5)[2]. The Order dated April 27, 2015 and signed by Judge Thomason, provided to Officers King and Maliska by Woerner stated as follows:

THIS MATTER having come before the Court on April 14, 2015, [...]testimony having been taken, and after careful consideration of the same, this Court is of the opinion that the same should be granted.

THEREFORE, it is hereby ORDERED, ADJUDGED, and DECREEDED as follows:

[...]

2. Plaintiff's Motion for Temporary Control of Marital Asset is hereby GRANTED. Management of the bar [MudBugs] shall be turned over to the Plaintiff, JANLEY WOERNER MIARKA, beginning ten (10) days from the day this order was rendered from the bench, specifically, Friday, April 24, 2015. ***PLAINTIFF HAS SPECIFIC AUTHORIZATION TO DO ALL THINGS NEEDED OR REQUIRED TO CONDUCT BUSINESS ON BEHALF OF THE***

---

[2] Plaintiff's Complaint does not include all of the above cited language and the Order was not attached to the Complaint. Instead, Plaintiff's Complaint states as follows: "Upon filing of the petition, the automatic stay under Section 362 of the Bankruptcy Code went into effect by operation of law. A Court notice was issued that same day advising creditors in bold type that the 'filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property...[i]f you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized.' (Ex. A; Notice Chapter 11 Bankruptcy Case, dated April 17, 2015)." (Doc. 1-1 at 3-4).

**L.L.C. AND TO MANAGE THE BUSINESS, including but not limited to installing a Point of Sale (POS) system, obtaining business licenses and liquor licenses, entering into or canceling contracts with vendors, et cetera.**

3. The Defendant, KAMIL MIARKA, shall be restricted from going to the bar, except by the express invitation by the Plaintiff. Plaintiff and Defendant are to have NO CONTACT with each other, except for necessary contact related to the minor children born of the parties and necessary discussions regarding bar operations initially. Any specific things are to be handled through the attorneys and not through the parties.

(Doc. 2 at 2-4; Doc. 2-5) (emphasis in original).[3]

Following the April 27, 2015, incident, Plaintiff filed the appropriate petition in his bankruptcy case and the court ordered that possession and control of the Mudbugs business be returned to Plaintiff. (*Id*. at 6). Plaintiff asserts that as a result of the April 27, 2015 incident, the police officers wrongfully allowed Woerner unfettered access to Plaintiff's property resulting in permanent loss of business records, tax documents, personal property, cash in the amount of $2,500, and his passport. Plaintiff also alleges that he lost records necessary for his tax returns and for financial reporting to the Bankruptcy Trustee and incurred late fees and attorney's fees ad a result of delinquent filings. (*Id*). Plaintiff additionally asserts that it will cost a total of approximately $5,000.00 to replace his passport. (*Id*).

---

[3] This Order is not attached to or memorialized in Plaintiff's Complaint. However, Plaintiff does not dispute the document or its submission to this Court for review. Further, this Court may consider the Order for purposes of Defendants' Motion to Dismiss because it is "central to or referred to in the complaint." *La Grasta v. First Union Sec. Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

Plaintiff originally filed his Complaint in the Circuit Court of Baldwin County, Alabama on April 27, 2017, against Defendants, City of Gulf Shores (the "City"), Officer Richard King, and Paul Maliska asserting negligence and violations of the Equal Protection Clause pursuant to 42 U.S, Code § 1983. (Doc. 1-1 at 1-9). The action was removed to this Court on May 30, 2017. (Doc. 1). The same day, Defendants filed a Motion to Dismiss Plaintiff's Complaint (Doc. 2), to which Plaintiff responded (Doc. 6) and Defendants replied. (Doc. 7).

## STANDARD OF REVIEW

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must first satisfy the pleading requirements of Rule 8(a)(2), which provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). While Rule 8 establishes a regime of "notice pleading," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), it does not eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action. "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v.*

*TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). There must, in addition, be a pleading of facts. The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2009). The complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S. Ct. at 1965, 1966 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949. Furthermore, the court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal*, 566 U.S. at 681, 129 S. Ct. at 1951.

When considering whether a complaint states a claim for relief, the Court "should assume, on a case-by-case basis, that well pleaded factual allegations are true and then determine whether they plausibly give rise to an entitlement to relief." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

## DISCUSSION

### I.    Count I:  Negligence

The entirety of Plaintiff's negligence claim states as follows:

> 16.    Plaintiff adopts and incorporates the above paragraphs as if the same were  fully set forth herein.
>
> 17.    Defendants (including Fictitious Defendants A and B) had a duty to perform their jobs without needlessly and wrongfully depriving resident, Kamil, of his property.
>
> 18. Defendants (including Fictitious Defendants A  and  B) negligently, carelessly and unskillfully performed their policing tasks.
>
> 19. As a proximate result of Defendants' negligence, the Kamil lost personal property, business records, cash in the amount of approximately $2,500, his passport, and suffered emotional distress and mental anguish.

(Doc. 1-1 at 7). Defendants have moved for a dismissal of Plaintiff's negligence claim because "Plaintiff makes absolutely no effort to allege what actions of the Defendants constituted negligence resulting in his alleged damages" and "makes no specific mention of the conduct of any particular Defendant."  (Doc. 2 at 7).  To the extent that a negligence claim has been properly pled, Defendants further assert dismissal is warranted because Defendants King and Maliska are entitled to peace officer immunity and

Defendant, City of Gulf Shores, is entitled to peace officer immunity as the employer of the officers involved. (Doc. 2 at 16-20).

In response, Plaintiff asserts that his Complaint sets forth factual allegations showing that the "Gulf Shores Police Officers defied a federal court automatic stay, entered pursuant to § 632 of the U.S. Bankruptcy Code, that [Plaintiff] had presented to them in writing, and instead took sides in a domestic dispute, restraining and depriving [Plaintiff] of his own property and allowing a non-owner spouse (Janley Woerner Miarka) unfettered access and control." (Doc. 6 at 2). Plaintiff additionally points out that his Complaint contains ten paragraphs detailing the factual allegations and, therefore, "taken on its face as true, has stated claims for which relief may by granted." (*Id*). Plaintiff's position is not compelling.

Considering all the factual allegations of Plaintiff's Complaint as true, Plaintiff's Complaint fails to establish a plausible claim for negligence against each or all of the named Defendants. Specifically, Plaintiff fails to state what actions each Defendant performed or failed to perform that amounted to negligence. While Plaintiff's Complaint details that the officers allowed Woerner to remain on the subject premises despite Plaintiff providing the Notice to the officers, the Complaint also details that the officers were given the Order by Woerner dated after the Notice was issued. Accordingly, Plaintiff acknowledges the conflict presented to the officers, but his Complaint fails to provide factual support as to how or why the actions of

the officers were negligent based on the subject circumstances. Instead, Plaintiff merely described the totality of the circumstances and alleged, without specification, that the Defendants were negligent. Such a conclusory assertion fails to plead a plausible claim and is subject to dismissal.

Assuming arguendo, that Plaintiff had properly pled a negligence action, Defendants alternatively assert that Count I is still due to be dismissed because the officers and the City, as their employer, have peace officer immunity.

> Every peace officer ... who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, ... and whose duties include the enforcement of ... the criminal laws of this state, and who is empowered by the laws of this state ... to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Ala. Code § 6-5-338(a). "[W]hether a qualified police officer is due § 6-5-338(a) immunity is now judged by the restatement of State-agent immunity articulated by *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000)." *Blackwood v. City of Hanceville*, 936 So. 2d 495, 504 (Ala. 2006) (internal quotes omitted). "A State agent asserting State-agent immunity bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity." *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008) (internal quotes omitted). "Should the State agent make

such a showing, the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in *Cranman* is applicable." *Id*. The two *Cranman* exceptions are as follows:

> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*Ex parte Cranman,* 792 So. 2d at 405. For purposes of the immunity issue, 'willful,' 'malicious' and 'bad faith' all require evidence that the defendant acted with the intent to injure or with ill will towards the plaintiff." *Rachel v. City of Mobile*, 112 F. Supp. 3d 1263, 1296 (S.D. Ala. 2015)(internal quotes omitted).

Plaintiff does not contest that the officers' actions arise from a function that would entitle the State agent to immunity. Nevertheless, the undersigned finds that Defendants have met their burden. Therefore, the burden shifts to Plaintiff to show that one of the exceptions to immunity applies. Plaintiff asserts that the officers are not entitled to qualified immunity because the "factual allegations set forth both willful actions and a mistaken interpretation of the law" because "[r]egardless of the order from state court, the Officers should have reasonably known that the federal stay takes precedence." (Doc. 6 at 13). Despite the assertions in Plaintiff's

response, Plaintiff's Complaint does not specifically allege that the officers acted willfully or under a mistaken interpretation of law. Further, considering all the factual allegations in Plaintiff's Complaint as true, Plaintiff has not shown that the officers acted with the necessary intent to injure or ill will towards Plaintiff or under a mistaken interpretation of law. The undisputed facts establish that the officers were given not one, but two court documents pertaining to the rights of Plaintiff and Woerner to be on the premises. The Notice explained generally that an automatic stay went in to effect in most instances, but also included language that the stay was not automatic in all instances and provided no language providing guidance as to whether a stay existed in Plaintiff's case. (Doc. 1-1 at 11-12). The Order issued in the divorce proceedings was dated after the Notice and specifically provided Woerner with the exclusive right to be on the premises. (Doc. 2-5). Thus, the factual allegations of Plaintiff's Complaint, taken as true, at best establish grounds for confusion, but do not establish that the officers acted in such a manner that they should be stripped of their immunity. Rather, the actions of the officers were not unreasonable given that the Order was entered after the automatic stay ostensibly could have gone into effect. As such, Plaintiff has failed to show that one of the two categories of exceptions to State-agent immunity recognized in *Cranman* is applicable and, therefore, the officers are entitled to peace officer immunity. Likewise, the City of Gulf Shores is equally entitled to peace officer immunity as the employer of

Officers King and Maliska. *See Howard v. City of Atmore*, 887 So. 2d 201, 211 (Ala. 2004) ("It is well established that, if a municipal police officer is immune pursuant to § 6–5–338(a), then, pursuant to § 6–5–338(b), the city by which he is employed is also immune.")

## II.     Count II: Constitutional Claims

Plaintiff's constitutional claim entitled "Equal Protection Claim 42 U.S.C. § 1983" states in its entirety as follows:

> 20.     The Plaintiff hereby adopts and incorporates the above paragraphs as if the same were fully set forth herein.
>
> 21.     This claim is brought pursuant to 42 U.S. Code § 1983.
>
> 22.     On April 27, 2015, Defendants (including Fictitious Defendants A and B), while acting under color of state law, unlawfully deprived Kamil of his real and personal property in violation of the Constitution and laws of the United States.
>
> 23.     As a proximate result of Defendants' actions, Kamil lost personal property, business records, cash in the amount of approximately $2,500, his passport, incurred attorney's fees, and suffered emotional distress and mental anguish.

(Doc. 1-1 at 8). Defendants contend Plaintiff's constitutional claim should be dismissed for failure to state a constitutional violation against either the City or the Defendant officers. More specifically, Defendants state that "[a]side from one reference to "Equal Protection" in the heading of Count II of his Complaint, Plaintiff makes absolutely no attempt to delineate what, if any, of his constitutional rights were allegedly violated by the actions of the Defendants."  (Doc. 2 at 7).  Alternatively, Defendants argue dismissal is warranted because Officers King and Maliska are entitled to qualified

immunity and because even if a constitutional claim had been properly pled, it has not been sufficiently pled against a municipality. (Doc 2 at 7-16, generally). In response, Plaintiff argues that the factual allegations of the Complaint properly pled a violation of the Fourth Amendment against Defendants and that immunity is not warranted based on the allegations in Plaintiff's Complaint.

Despite Plaintiff's efforts in his response to clarify what is alleged in the Complaint, the Complaint itself fails to state what constitutional rights were allegedly violated by Defendants, jointly or separately, or on what grounds. As a result, Count II is subject to dismissal. Nevertheless, the undersigned will address municipal liability raised by the City of Gulf Shores and qualified immunity raised by Defendants King and Maliska.

### A. Officer King and Officer Maliska

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]he burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert International v. James*, 157 F.3d 1271, 1281 (11th Ci r. 1998). "Once the defendants have established that they were acting within their discretionary authority, the burden shifts to the

plaintiffs to show that qualified immunity is inappropriate." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). To do so, the plaintiffs must demonstrate that: (1) a constitutional right has been violated; and (2) the right was clearly established by the law at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). This two-pronged analysis may be done in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 838-839 (11th Cir. 2010) (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 821, 172 L.Ed.2d 565 (2009)). Under the second prong, a right is "clearly established" if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Accordingly, an officer violates a clearly established right when he or she takes actions that: (1) have previously been ruled unconstitutional in a factually similar case; or (2) are so egregious that the government actor must be aware that he is acting illegally. *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 955–56 (11th Cir. 2003).

For purposes of federal qualified immunity analysis, a defendant acts within his discretionary authority when "his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (internal quotes omitted). For this inquiry, "[w]e ask whether the government employee was (a) performing a legitimate job-related function (that is,

pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004). Plaintiff has conceded that the officers were acting within the scope of their discretionary authority. (Doc. 6 at 4). As such, the burden shifts to Plaintiff to establish that the officers' actions violated a clearly established statutory or constitutional right.

Plaintiff asserts that "there are federal statutes and constitutional provisions that clearly establish the rights protected in this matter" citing to both to the Fourth Amendment right to be free from unreasonable seizure and § 362(a)(3) of the United States Bankruptcy Code which operates as an automatic stay against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." (Doc. 6 at 5-6). Alternatively, Plaintiff argues that case law exists which clearly established that the officers' actions were unconstitutional based on materially similar circumstances. (Doc. 6 at pp.4-5). In support of his position that the officers' conduct violated a right that was clearly established, Plaintiff relies on *Chruma v. Bosarge*, 2016 WL 3199526, at *7 (S.D. Ala. June 8, 2016), wherein this Court discussed whether a right was clearly established, in pertinent part, as follows:

> "First, the words of the pertinent federal statute or constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances to overcome qualified immunity, even in the total absence of case law." *Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (emphasis omitted). The requisite fair and clear notice can be given without case law only "[i]n

some rare cases." *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003).

[...]

"Third, [when] the Supreme Court or we, or the pertinent state supreme court has said that 'Y Conduct' is unconstitutional in 'Z Circumstances,'" then if "the circumstances facing a government official are not fairly distinguishable, that is, are materially similar [to those involved in the opinion], the precedent can clearly establish the applicable law." *Vinyard*, 311 F.3d at 1351-52."

(Doc. 6 at 4-5). Plaintiff asserts that this action is one of the "rare cases" where the first scenario is applicable because the words of the Fourth Amendment and § 362(a)(3) of the United States Bankruptcy Code are specific enough to clearly establish the law applicable to particular conduct and circumstance in the absence of case law. Not present in Plaintiff's response is an acknowledgement that the Court in *Vinyard*, went on to explain that "[t]his kind of case is one kind of "obvious clarity" case. For example, the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful." *Vinyard*, 311 F.3d at 1350.

While Plaintiff cites the language of the Fourth Amendment and § 362(a)(3), Plaintiff provides no reasoning as to how the conduct of the officers in this action is "so bad" that it could not be lawful. Moreover, it is undisputed in this action that the officers were confronted with two conflicting court documents, a fact which alone, diminishes Plaintiff's position that the conduct under the circumstances alleged was obviously unlawful. As a result, Plaintiff has not established that in this case, the Fourth

Amendment § 362(a)(3) of the United States Bankruptcy Code are specific enough to establish clearly the law applicable to particular conduct and circumstances to overcome qualified immunity, in the total absence of case law.

Alternatively, Plaintiff argues that case law exists which has previously established the law under materially similar circumstances. (Doc. 6 at 6-9). Specifically, Plaintiff points to the following three cases to support his position: *Frank v. Lake Worth Utilities*, 464 Fed. Appx. 802 (11th Cir. 2012), *Griggs v. City of Gadsden Rev. Dept.*, 327 Fed. Appx. 186 (11th Cir. 2009), and *Talley v. Ala. Dept. of Public Safety*, 472 F.Supp.2d 1323 (N.D. Ala. 2007).

In *Frank,* the Eleventh Circuit affirmed the Rule 12(b)(6) dismissal of Plaintiff's § 1983 claim against the City of Lake Worth and Lake Worth Utilities based on the violation of the automatic stay provision of § 362 arising out of the collection efforts against Plaintiff after he had filed a separate bankruptcy proceeding. Plaintiff's argument is not compelling because the facts in *Frank* are not similar to the facts of the instant action and, even if they were, in *Frank* the only relevant holding was that the Plaintiff could not raise a new claim on appeal. *Frank*, 464 Fed. Appx. at 802.[4] The other cases relied on by Plaintiff are equally dissimilar. In *Griggs,*

---

[4] Plaintiff counters this fact by stating "Although the Court ultimately denied Frank's §1983 claim because he failed to link the violation of the automatic stay provision to his §1983 claim in the lower court proceeding, one can reasonably infer from the Court's opinion that had Frank timely raised the issue, liability would have been considered under the facts."

the Eleventh Circuit found that commencement of criminal proceedings or proceedings by which the City enforces its regulatory power, are exceptions to the general stay provisions found in 11 U.S.C. § 362(a). In *Talley,* the Court found the suspension of the license was a continuation of a criminal action or proceeding, and therefore, excepted from the automatic stay prohibitions. Plaintiff urges that both cases stand for the position that had the exception not applied, the officers would have violated the automatic stay as result of their conduct." (Doc. 6 at 8). Even if such an inference were permissible, it would still fall short of establishing that the conduct of the officers in this action was a violation of clearly established law, based on the lack of factually similar circumstances.

Lastly, Plaintiff argues that every reasonable person should know that federal law pre-empts state law such that after being presented with a federal stay that conflicted with a state court order, the officers reasonably should have known to defer to the federal order. It appears that Plaintiff's position is that federal precedence is so commonly known that the officers must have known that they were acting illegally. In that regard, Plaintiff argues that that language of the Notice clearly states "in most instances" an automatic stay goes into effect and that "no one suggested that 'certain circumstances' or exemptions existed in this situation." (Doc. 6 at 11). Nevertheless, the language of the notice, itself, clearly suggests to the

---

(Doc. 6 at 6-7) Even still, the possibility of a consideration under different circumstances offers no legal support to Plaintiff's position.

readers, i.e., the officers, that there are circumstances that may limit or negate the referenced automatic stay. Accordingly, even if Plaintiff is correct in his rationale, there is a lack of factual support that an automatic stay had, in fact, been effected in the instant action or that the subsequently entered Order of Judge Thomason was obviously invalid. Rather, as set forth above, the documentation presented to the officers by Plaintiff indicated only that there "may" be a stay, while the subsequently dated court order specifically addressed Plaintiff's and Woerner's ability to have access to the property, even after Plaintiff filed for bankruptcy.[5]  Therefore, based on the facts of this case, the actions of the officers were not unreasonable, egregious, or obviously unlawful.  Moreover, the undersigned finds *Trolley Boats, LLC v. City of Holly Hill*, 2009 WL 174946 (11th Cir. Jan. 28, 2009) cited to by Defendant to be compelling for the position that the officers are entitled to qualified immunity in circumstance factually similar to those present in this action. *See Trolley Boats, LLC v. City of Holly Hill*, 2009 WL 174946 (11th Cir. Jan. 28, 2009); *Trolley Boats, LLC v. City of Holly Hill,* 2009 WL 890386 (M.D. Fla., March 31, 2009).[6]

---

[5] Plaintiff points out that after this incident, a District Court Judge did not have any reservations and quickly concluded that there was a clear violation of the automatic stay and that "the same would have been clear to any reasonable officer presented with the situation". (Doc. 6 at 12). However, this argument again fails to acknowledge that prior to the District Judge's determination (which occurred after this incident took place), a different judge faced with the same bankruptcy notice provided to Officers King and Maliska determined that Woerner, and not Plaintiff, had possessory rights. Following Plaintiff's rationale, the officers' conduct should be considered reasonable because it was consistent with a judge's -- albeit a different judge's --Order.

[6] *Trolley Boats* involved a dispute between business owners where Plaintiff asked for police assistance in removing the other two owners from the premises.  Upon arrival to the

Plaintiff argues that *Trolley Boats* is factually distinguishable from the case at hand because in *Trolley Boats* (1) the dispute was between two owners of business and (2) the plaintiffs did not specify the documentation provided to the officers that established rights to possession and did not allege that the officer knew the others lacked a right to exclusively possess the premises. (Doc. 6 at 10). However, these dissimilar facts are not detrimental to the Court's holding. More specifically, regardless of whether Plaintiff was the owner of MudBugs, the issue faced by the officers was who had possessory rights – the same as in *Trolley Boats*. Second, the fact Plaintiff failed to provide documentation to the officers in *Trolley Boats* substantiating possessory rights is not dissimilar to this action because the conflict the officers faced, i.e., competing claims of a right to possess, is the same in both cases. Nevertheless, even without considering *Trolley Boats*, dismissal would still be warranted because it is Plaintiff's burden, not Defendants, to establish that the officers' conduct was a violation of a clearly established right through factually similar case law, and Plaintiff has failed to meet that burden.

---

business, the owners Plaintiff and the officers were there to remove, informed the officer that Plaintiff did not have exclusive rights to possess the premises and showed the officers some documentation to that end. The officers ignored the other owners and assisted Plaintiff, who had not provided any documentation of his possessory rights. The District Court initially denied the Officers Motion to Dismiss on qualified immunity grounds and the officers appealed. Upon review, the Eleventh Circuit remanded the case finding that the District Court failed sufficiently analyze the issue of qualified immunity. On remand, the District Court found that the officers were entitled to qualified immunity because (1) there was no clearly established law that gave the officer clear notice that his alleged conduct was unlawful, and (2) the officer's conduct was not so egregious that he must have been aware that he was acting illegally. *Trolley Boats,* 2009 WL 890386 at *6-7.

For the reasons set forth herein above, the undersigned finds that Officers King and Maliska are entitled to qualified immunity as to Count II and, accordingly, recommends that Count II be dismissed.

## B.    City of Gulf Shores

To the extent that a constitutional claim had been sufficiently pled, Defendants assert such a claim is still subject to dismissal against the City of Gulf Shores.  In order to state a plausible § 1983 claim against the City of Gulf Shores, Plaintiff must present facts that (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (*citing to City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).[7]  A party may establish that such a policy exists by proving either "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through repeated acts of a final policymaker for the county." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003).   "In order to establish section 1983 liability against a county based on an unofficial custom or practice, "a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with

---

[7] The City cannot be held liable on a theory of respondeat superior for the conduct of the officers.  S*ee Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding that § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor").

the force of law." *Moore v. Miami-Dade County*, 502 F.Supp.2d 1224, 1231, (S.D. Florida 2007) (*quoting Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). *See also Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir.1 999) (a custom is "a practice that is so settled and permanent that it takes on the force of the law.")(*quoting Sewell v. Town of Lake Ham*ilton, 117 F.3d 488, 489 (11th Cir. 1997), cert. denied, 522 U.S. 1075, 118 S.Ct. 852, 139 L.Ed.2d 753 (1998)). "In order for a plaintiff to demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice.'" *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (*quoting Wayne v. Jarvis*, 197 F.3d at 1105. (internal quotations and citations omitted). "Normally, random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys*, 787 F.2d 1496 (11th Cir.1986). Rather, the incident must result from a demonstrated practice. *See Wayne*, 197 F.3d at 1106 (determining that a single decision, "even if erroneous, would not support the inference that the County had a custom or policy" in place).

Plaintiff's Complaint fails to mention any officially promulgated policy or unofficial policy or custom of the City on which liability may rest. Moreover, Plaintiff has failed to set forth any facts that establish an unofficial policy or custom. To the contrary, the factual allegations of Plaintiff's Complaint only set forth the details surrounding the incident in which he was involved and Plaintiff does not present any factual support that the officers actions with regard to Plaintiff's incident is similar to other

incidents or that on previous occasions there have been other instances that resulted in damages based on similar circumstances.

Recognizing this shortcoming, Plaintiff, in his response, reiterates the fact that during the incident Officer King had a phone conversation with an unknown individual, the contents of which are also unknown. In that regard, Plaintiff states as follows:

> At this juncture, absent some permitted pre-trial discovery, Kamil would not reasonably know the substance of that conversation. However, discovery could add specifics to this basis of liability. For instance, depositions, audio recordings, or the chest cameras worn by the Officers obtained through discovery, could likely reveal that Officer King called his supervisor, or other City personnel with policymaking authority, who then informed Officer King of an inappropriate City policy that requires officers to disregard any federal court orders. Or, more likely, a supervisor ratified the Officers' unconstitutional decision. However, at this early stage in the litigation, and without any discovery, Kamil cannot in good faith detail such a claim.

(Doc. 6 at 3)(internal citations omitted). At this stage, the question before this Court is not whether some possible inference may result in a cause of action; rather, it is whether, accepting the well-plead facts as true, Plaintiff has stated a cause of action that is more than mere possibility. *See Randall v. Scott*, 610 F.3d 710. For the reasons stated herein above, Plaintiff has not met that burden and his § 1983 claim against the City of Gulf Shores is due to be dismissed.

## CONCLUSION

For the reasons set forth herein above, it is recommended that Defendants' Motion to Dismiss be granted and Plaintiff's Complaint be dismissed.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection

that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 31st day of July 2017.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**